UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

KENYA BROWN,                          :
      Plaintiff,                 :
                                  :
      v.                          :     Case No. 3:20cv864(KAD)
                                    :
ROLLIN COOK, ET AL.,                  :
      Defendants.                 :

## INITIAL REVIEW ORDER

**Preliminary Statement**

     Plaintiff, Kenya Brown ("Brown"), a sentenced inmate currently incarcerated at

Cheshire Correctional Institution brings this civil rights action pursuant to 42 U.S.C. § 1983

against Commissioner Rollin Cook, Director of Dental Services Stephanie Katz ("Dental

Director Katz"), Dr. Richard Fisher, Dr. Lichtenstein,[1] Dental Assistant Yvonne Brouchard ("DA

Brouchard") and Nurse/Health Services Review Coordinator Debra Cruz ("Nurse/HSR

Coordinator Cruz").

     Sixteen of the first twenty pages of the fifty-nine-page amended complaint are devoted to

legal standards applicable to claims brought under the Eighth Amendment and various

descriptions and definitions of parts of the mouth, dental conditions, symptoms of dental

conditions, urgent dental problems, and unlawful dental practices.  Am. Compl., ECF No, 11, at

4-8, 10-20.  The allegations specific to Brown are set forth on pages twenty-one through fifty-

---

[1] Brown incorrectly lists Dr. Lichtenstein's last name as Lithenstine in the case caption, Lichtenstine in the description of parties and body of the amended complaint and Litenstine in the description of claims.  *See* Am. Compl. at 1-2, 24-25, 37-39, 54-56.  The Court takes judicial notice of the fact that Brown named Dr. Lichtenstein as a defendant in a prior lawsuit using his correct last name.  *See Brown v. Benoit*, Case No., 3:17cv53(SRU) (Complaint, ECF No. 1, at 1; Waiver of Service of Summons signed by Bruce Lichtenstein, ECF No. 14).  The Clerk is directed to edit the docket to reflect the correct spelling of Dr. Lichtenstein's last name.

one and include claims that: Nurse/HSR Coordinator Cruz was deliberately indifferent to his health in treating his symptoms of COVID 19 in March 2020; Dr. Lichtenstein was deliberately indifferent to his dental needs and engaged in retaliatory conduct in 2019, and Dr. Fisher, DA Brouchard, Nurse/HSR Coordinator Cruz, Dental Director Katz and Commissioner Cook were deliberately indifferent to his dental needs and engaged in retaliatory conduct in May and June of 2020.  For the reasons set forth below, the Court dismisses in part the deliberate indifference to dental needs and retaliation claims asserted against defendants Fisher, Brouchard, Lichtenstein, Cruz, Katz and Cook and severs and dismisses without prejudice the claims against defendant Cruz arising out of Brown's treatment for COVID 19.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee."  *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).  In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when a plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A

complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of

a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet

the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). [2]

**Allegations**

Brown has been incarcerated since 2003 and his maximum release date is listed on the

Department of Correction website as February 17, 2021.  *See* Compl., ECF No. 1, at 21 ¶ 19;

http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=219191.  The events described

in the complaint occurred during Brown's confinement at Cheshire.

In September 2019, pursuant to an agreement reached in a prior lawsuit[3] in which Dr.

Lichtenstein and Dr. Richard P. Benoit were named as defendants, Dental Director Katz

instructed Lichtenstein to begin to clean and restore Brown's teeth that had cavities and to fit

---

[2]  The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims.  That is
because the core purpose of an initial review order is to determine whether the lawsuit may proceed at all
in federal court and should be served upon any of the named defendants. If there are no facially plausible
federal law claims against any of the named defendants, then the Court would decline to exercise
supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if
there are any viable federal law claims that remain, then the validity of any accompanying state law
claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for
summary judgment.  More generally, the Court's determination for purposes of an initial review order
under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right
of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary
judgment in the event that the Court has overlooked a controlling legal principle or if there are additional
facts that would warrant dismissal of a claim.

[3]  As indicated above, Brown filed a civil rights action in this Court against Dr. Lichtenstein in 2017.  He
also named Dental Director Benoit as a defendant.  *See Brown v. Benoit, et al.*, Case No. 3:17cv53(SRU) (Compl.,
ECF No. 1).  On February 16, 2018, the parties filed a stipulation, signed on January 16, 2018, of dismissal of the

Brown for "a pair of partials."  *Id.* at 24 ¶ 29; at 37, Section G, at ¶¶ 6-8.  During the process of restoring some of Brown's teeth, Dr. Lichtenstein became aware that Brown had a large pimple on his upper gum over tooth number 8.  *Id.* at 38 ¶ 11.  Dr Lichtenstein informed Brown that that pimple was an abscess or a fistula and was nothing to worry about.  *Id.* ¶¶ 14-15.

On or about May 2, 2020, Brown's tooth number 8, an incisor tooth, broke while he was eating dinner.  *Id.* at 22 ¶ 11; at 32 ¶ 91.  Brown asked Officer Chenye to contact the medical department because the broken tooth was very painful.  *Id.* ¶¶ 12-14.  11.  A medical staff member informed Officer Chenye that no one from the dental department was available and that Brown should submit a written request to be seen.  *Id.* ¶ 15.  Brown submitted requests to the medical and dental departments and to a medical supervisor.  *Id.* ¶ 16.

On May 5, 2020, Officer Chenye asked Brown if he had been seen by a dental provider.  *Id.* ¶ 18.  Brown informed Officer Chenye that no one in the dental or the medical department had summoned him to be seen and that he was still experiencing pain from his broken tooth.  *Id.* at 22-23 ¶ 19.  On May 8, 2020, Officer Chenye called the medical department on behalf of Brown.  *Id.* at 23 ¶ 20.  A medical provider suggested that Brown submit a request to be seen.  *Id.*  Brown believes that Dr. Lichtenstein was aware that the abscess/fistula was a sign of infection and took no steps to treat it in retaliation for the settlement agreement reached between Brown and Lichtenstein and the other defendants named in the prior lawsuit.  *Id.* at 39 ¶¶ 20-22.

On May 10, 2020, Officer Chenye called the medical department on behalf of Brown.  *Id.* ¶ 21.  A medical provider suggested that Brown submit a request to be seen.  *Id.*  Officer Chenye informed his supervisor that no one in the medical department would treat Brown despite the fact that he had been experiencing severe pain due to a broken tooth.  *Id.*  Brown submitted another

case with prejudice.  *See* ECF No. 32.           4

request to the medical department and two more requests to the dental department seeking treatment for his painful dental condition. *Id.* at 23-24 ¶¶ 23-25.

On May 15, 2020, Dental Hygienist Rachel and Dr. Fisher summoned Brown to the dental department to be examined. *Id.* at 24 ¶¶ 26-27. Brown underwent x-rays of his teeth. *Id.* ¶ 27. Brown informed Dr. Fisher that his incisor had just "snapped (crumbled) 3 quarters of the way up to the gumline" and that the pain was severe. *Id.* at 25 ¶ 35. Brown showed Dr. Fisher the piece of tooth that had snapped off. Id. ¶ 37. Dr. Fisher stated that he "does not do restoration." *Id.* at 24 ¶ 28.

Brown informed Dr. Fisher that in September 2019, Dr. Lichtenstein had started to restore two teeth with cavities as part of an agreement but had failed to finish the restorations. *Id.* ¶¶ 29-30. Brown showed Dr. Fisher that he had an abscess on his upper gum above the tooth that had snapped off and explained that Dr. Lichtenstein had not treated the abscess. *Id.* ¶ 31; at 25 ¶ 36. Dr. Fisher informed Brown he had reviewed Brown's dental records and that the abscess was called a fistula. *Id.* at 24 ¶ 31; at 26 ¶ 40. Although Brown stated that he was experiencing severe pain due to his broken tooth, Dr. Fisher did not prescribe pain medication or any other form of pain relief. *Id.* at 25 ¶¶ 38-39. Nor did Dr. Fisher treat the fistula. *Id.* at 24-25 ¶¶ 31, 39.

On May 18, 2020, Brown filed a request for HSR ("Health Services Review") because he was dissatisfied with Dr. Fisher's treatment of his dental condition. *Id.* at 26 ¶ 41. On May 19, 2020, Dr. Fisher called Brown to the dental department to be examined. *Id.* ¶ 42. During the examination, Dr. Fisher stated that Brown's "partial" might break. *Id.* ¶ 42. On May 20, 2020, Brown filed an inmate request and a request for HSR complaining that his "partial" had broken

due to the change in his bite and that he needed medication. *Id.* ¶ 43.  On May 25, 2020, Brown submitted both an inmate request and a request for HSR indicating that he was experiencing severe pain and could not drink hot or cold liquids or sleep. *Id.* ¶¶ 44-45.  On May 30, 2020, Brown submitted an inmate request indicating that he was experiencing severe pain and could not sleep. *Id.* ¶ 46.  Later that day, Brown informed an officer in his housing unit that he was experiencing severe pain and needed medication to alleviate his symptoms. *Id.* ¶ 47.  On June 1, 2020, a medical staff member informed Brown that a dentist would have to enter an order for medication because his pain was caused by a dental condition. *Id.* ¶ 48.

On June 2, 2020, Brown's "partial tooth" broke because his "missing front tooth" had changed his bite. *Id.* at 27 ¶ 49.  Brown submitted a request to be seen by a dental provider.  On June 7, 2020, Brown submitted two requests for HSR.  In the first request, he claimed that Dr. Fisher had denied him dental treatment. *Id.* ¶ 50.  In the second request, Brown challenged customs and policies and Administrative Directive 8.4. *Id.* ¶ 51.  Later that day, when Brown arrived at the medical department to receive medication for conditions other than his dental condition, a nurse provided Brown with two Motrin tablets to alleviate the pain caused by his broken tooth and infection of his gum. *Id.* ¶ 52.

On June 10, 2020, Nurse/HSR Coordinator Cruz stated that she had advised Dr. Fisher that Brown required treatment, but that she could not force Dr. Fisher to treat Brown. *Id.* ¶ 53. Later that day, Brown submitted a request for HSR.  In response, a nurse in the medical department informed Brown that he needed a prescription from a physician to receive pain medication. *Id.* ¶ 54.  On June 13, 2020, Brown submitted a request to see the dentist because the pain that he was experiencing from his broken tooth, on a scale of 1 to 10, was an 8. *Id.* ¶ 55.

Later that day, Brown requested Motrin from a nurse in the medical department but he or she informed Brown that he needed a prescription from a physician.  *Id.* ¶ 56.  On June 14, 2020, Brown informed a nurse in the medical department that he was experiencing serious dental pain. *Id.* ¶ 57.

On June 15, 2020, Nurse/HSR Coordinator Cruz informed Dr. Fisher that Brown had submitted many inmate requests and requests for HSR.  *Id.* at 28 ¶ 58.  Later that day, a medical provider called Brown to the medical department to be assessed for release on parole.  Brown showed his broken and infected tooth to Nurse/HSR Coordinator Cruz, who was also present in the medical department.  *Id.* ¶ 57.

On June 16, 2020, counselors in Brown's housing unit contacted the housing unit manager regarding the condition of Brown's infected and painful tooth.  *Id.* ¶ 60.  The unit manager contacted Dr. Fisher and Nurse/HSR Coordinator Cruz.  *Id.* ¶ 61.  A correctional official informed Brown that Dr. Fisher would call him to be seen the following day.  *Id.* ¶ 62.

On June 17, 2020, Nurse/HSR Coordinator Cruz informed Captain Rodriguez that Dr. Fisher would see Brown later that day.  *Id.* ¶ 65.  Dr. Fisher did not call Brown to be seen on June 17, 2020.  *Id.* ¶ 64.  At some point, Captain Rodriguez informed Brown that a medical provider would call him to be seen on June 18, 2020 and would address his need for pain medication.  *Id.*at 28-29 ¶ 66.  No one called Brown to the medical department on June 18, 2020 to receive pain medication.  *Id.*

On June 19, 2020, Brown spoke to Captain Rodriguez who was aware that Brown had not been called to the medical department on June 18, 2020.  *Id.* at 30 ¶¶ 71-72.  Captain Rodriguez stated that he would visit the dental department personally to address the delay in

Brown's dental treatment.  *Id.* ¶ 73.

At approximately 11:00 a.m. on June 19, 2020, DA Brouchard summoned Brown to the dental department.  *Id.* ¶ 74.  DA Brouchard took x-rays of Brown's infected tooth and two other front teeth.  *Id.* ¶ 76.[4]  The "partial" came off.  *Id.*  Dr. Fisher wondered why Brown was there to see him given that he had seen Brown a month earlier.  *Id.* ¶ 77.  When Brown stated that he was experiencing severe dental pain, Dr. Fisher asked whether "we were getting rid of the other teeth."  *Id.* ¶ 78.  By other teeth, Dr. Fisher meant the two front teeth that DA Brouchard had x-rayed in addition to the broken tooth.  *Id.*  Brown indicated that the second tooth was "in mint condition" aside from the fact that the "partial" was missing.  *Id.*  Brown would not permit Dr. Fisher to extract the two front teeth.  *Id.* ¶ 79.  Dr. Fisher then refused to treat Brown's infected gum or his broken tooth and stated that he did not perform restorations of teeth.  *Id.* at 31 ¶¶ 79-80.

Brown then agreed to permit Dr. Fisher to extract what was left of the broken tooth.  Dr. Fisher and DA Brouchard were aware that the type of anesthetic usually used on dental patients was not always effective in anesthetizing Brown's mouth/jaw because of other medications that had been prescribed to Brown.  *Id.* ¶ 84.  They also insisted that infection in the tooth or gum would not make it more difficult for the anesthetic to become effective.  *Id.* ¶ 83.  After multiple shots of a local anesthetic, Brown informed Dr. Fisher that he was not completely numb.  *Id.* ¶ 85.  Dr. Fisher spent two hours attempting to extract the remaining pieces of the broken tooth from Brown's jaw.  *Id.at 31-32* ¶ 85.  When Brown informed DA Brouchard that he was experiencing pain after the procedure, she taunted him and called him a baby.  *Id.* at 32 ¶ 86.  Dr.

---

[4]  At a later point in the amended complaint, Brown refers to these two front teeth as either tooth number 6 and tooth number 7 or tooth number 9 and tooth number 10.  *Id.* at 50, Section J, ¶ 17.

Fisher prescribed ten Motrin tablets but did not address Brown's need for an antibiotic. *Id.* ¶¶ 86-87.

Nurse/HSR Coordinator Cruz examined Brown the following day and observed pus oozing from the area where the infected tooth had been extracted. *Id.* ¶ 91. She called the on-call physician who prescribed an antibiotic. *Id.*

**Discussion**

Brown alleges that Drs. Fisher and Lichtenstein, DA Brouchard, Nurse/HSR Coordinator Cruz, Dental Director Katz and Commissioner Cook were deliberately indifferent to his dental needs; Nurse/HSR Coordinator Cruz was deliberate indifferent to a risk of harm to health from COVID 19; Dr. Fisher, DA Brouchard and Dr. Lichtenstein retaliated against him for filing grievances and requests in violation of his First Amendment rights; and Nurse/HSR Coordinator Cruz failed to properly or timely dispose of his requests for HSR and denied him access to the courts in violation of his First and Fourteenth Amendment rights. Brown seeks injunctive and declaratory relief from defendants Cook and Katz in their official capacities and compensatory and punitive damages from all defendants in their individual capacities. *Id.* at 58-59.

**Claims Asserted on Behalf of Other Inmates**

In count one of his description of claims, Brown alleges that the defendants were aware of his serious dental needs as well as the serious dental needs of all other inmates confined within the Department of Correction and failed to provide treatment to address his dental needs and the dental needs of other inmates in a timely or adequate manner in violation of the Eighth Amendment. *Id.* at 52. He also asserts that Commissioner Cook and Dental Director Katz have failed to supervise their subordinates in the provision of dental treatment to all inmates within the

Department of Correction and Nurse/HSR Coordinator Cruz has disregarded requests for HSR filed by him and other inmates confined at Cheshire. *Id.* at 53-54. He seeks injunctive relief pertaining to the hiring of additional dental providers and the implementation of new dental procedures and policies at all prison facilities within the Department of Correction. *Id.* at 58.

The Supreme Court has consistently held that a *pro se* litigant does not have standing to sue on behalf of other litigants. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party") (internal quotation marks and citations omitted); *Hollingsworth v. Perry*, 570 U.S. 693, 707–08 (2013) ("[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties") (internal quotation marks and citation omitted). In addition, a litigant in federal court has a right to act as his own counsel pursuant to 28 U.S.C. § 1654, but as a non-attorney, has no authority to appear as counsel for others. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another's behalf in the other's cause."); *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305, 1308 (2d Cir. 1991) (Section 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves") (internal quotation omitted).

Accordingly, Brown does not have standing to assert claims on behalf of anyone other than himself. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential [limit on standing is the] principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties."). To the extent that Brown attempts to raise and assert claims and requests for injunctive relief on behalf of other inmates, those

claims and requests for relief are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Declaratory Relief**

Brown seeks a declaration that the defendants "exhibited deliberate indifference to the serious dental needs of plaintiff under the First and Eighth Amendment[s]." Compl. at 58. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek only prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). Accordingly, Brown's request for a declaration that the defendants violated his federal constitutional rights in the past is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68, (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief") (citations omitted). Furthermore, if Brown were to prevail on either of his constitutional claims, the Court necessarily would have determined that the defendants violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary. Accordingly, the request for declaratory relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**First and Fourteenth Amendments – Health Grievances**

Brown alleges that Cruz, as the HSR Coordinator at Cheshire, disregarded or failed to timely address the many requests for HSR filed by him during May and June 2020. Brown claims that Cruz refused to dispose of his requests for HSR at all or in a timely manner as means

of deterring him from filing a lawsuit.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures' ") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  As Brown has no constitutionally protected right to file a medical grievance or a request, the allegations that Nurse/HSR Coordinator Cruz neglected to respond or timely respond to his requests for HSR fails to state a plausible claim under the Fourteenth Amendment.  The Fourteenth Amendment due process claim asserted against Nurse/HSR Coordinator Cruz is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

Brown's allegation that Cruz attempted to deter him from filing a lawsuit by failing to process his HSR requests in a timely manner may be construed as a claim of denial of his right to seek redress of grievances by denying him access to the courts.  The First Amendment protects an individual's right to petition the government for redress of grievances.  Included in that right is an individual's right of access to the courts.  *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) ("The constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress.") (internal quotation marks and alteration omitted).  To state a denial-of-access-to-the-courts claim, a prisoner must allege that he or she suffered an "actual injury," (2) to a non-frivolous legal claim, (3) concerning his criminal conviction, habeas corpus petition, or conditions of confinement.  *Lewis v. Casey*,

518 U.S. 343, 349, 352-55 & n.3 (1996). To demonstrate "actual injury" the Plaintiff must demonstrate that the wrongful conduct actually "hindered his efforts to pursue a legal claim." *Id.* at 351.

This case was commenced on June 22, 2020 and the Amended Complaint was filed on July 10, 2020, a few weeks following the conduct at issue. Thus, Brown has not plausibly alleged that he suffered an actual injury as a result of the alleged failure of Nurse/HSR Coordinator Cruz to timely or properly process his requests for HSR. The First Amendment claim that Nurse/HSR Coordinator Cruz denied Brown his right to seek redress of grievances by denying him access to the courts is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Eighth Amendment - Deliberate Indifference to Dental Needs

Brown alleges that Dr. Lichtenstein was deliberately indifferent to his dental needs in September 2019 and that Dr. Fisher, DA Brouchard, Nurse/HSR Coordinator Cruz, Dental Director Katz and Commissioner Cook were deliberately indifferent to his dental needs in May and June 2020. The Eighth Amendment prohibits deliberate indifference by medical or dental providers to an inmate's serious dental needs. *See Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (applying deliberate indifference standard to dental treatment claim) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

To state a claim for deliberate indifference to a serious dental or medical need, a plaintiff must meet a two-pronged test. First, objectively, the inmate's medical need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). The Second Circuit has observed "dental conditions, like other medical conditions, may be of varying severity[]"

*Chance*, 143 F.3d at 702.  Thus, not all dental conditions will be sufficiently serious to meet the objective prong.  Factors relevant to the seriousness of a dental or medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Id.*  If a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," rather than a denial of any treatment for his or her condition, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim."  *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (quoting *Chance*, 143 F.3d at 702).

The second or deliberate indifference prong is subjective.  Under this prong, the plaintiff must allege that the medical staff member or "'prison official knew of and disregarded the plaintiff's serious [dental] needs.'"  *Harrison*, 219 F.3d at 137 (quoting *Chance*, 143 F.3d at 703).  The Second Circuit has defined the mental state of deliberate indifference as "[the] equivalent [of] subjective recklessness, as the term is used in criminal law" and that it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious . . . harm [to the inmate's health] will result."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37, 839-40 (1994).

Mere negligent or inadvertent conduct, however, does not constitute deliberate indifference.  *See Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Salahuddin*, 467 F.3d at 280 ("recklessness entails more than mere negligence"). Nor does a difference of opinion between a medical provider and an inmate regarding a diagnosis or appropriate medical treatment. *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

As to the seriousness of his condition, Brown alleges that in September 2019, Dr. Lichtenstein began the process of restoring a few of his teeth pursuant to a settlement agreement reached in another federal case. At that time, Dr. Lichtenstein observed a pimple on Brown's upper gum above tooth number 8. He informed Brown that it was a fistula or abscess and that it was nothing to worry about. Brown alleges that in September 2019, the fistula/abscess was a sign of an infection in his gum and/or tooth number 8 and that in May 2020, the fistula/abscess had grown and had begun to drain pus. He contends that a fistula or abscess is a serious dental condition that can lead to the loss of a tooth, brain damage or death if left untreated. In May 2020, Brown's tooth number 8 broke while he was eating a meal and caused him to experience severe pain and difficulties drinking hot and cold liquids and sleeping. The Court concludes that Brown has alleged sufficient facts to state a claim that he suffered from a condition that might degenerate into an objectively serious dental condition when Dr. Lichtenstein treated him in September 2019 and that he suffered from several objectively serious dental conditions when Dr. Fisher, DA Brouchard and Nurse Cruz treated him in May and June 2020.

15

### Dr. Fisher, DA Brouchard and Nurse/HSR Coordinator Cruz

As to the mens rea requirement, Brown alleges that despite informing Dr. Fisher and DA Brouchard of his painful dental conditions and infection both verbally and in writing, they failed to prescribe medication or other measures to alleviate the severe pain caused when tooth number 8 broke in early May 2020, failed to provide treatment for the infection/abscess associated with tooth number 8, failed to ensure that he was adequately anesthetized prior to extracting the pieces of the tooth number 8 that remained in his jaw and refused to restore two other front teeth. These allegations state a plausible claim that Dr. Fisher and DA Brouchard were aware or Brown's painful and serious dental conditions and/or conditions that might result in a serious risk of harm to his health but failed to take steps to evaluate and treat those conditions in a timely manner or at all.

Brown alleges that Nurse/HSR Coordinator Cruz became aware of his severe dental pain and possible gum or tooth infection through verbal requests and written requests for HSR and failed to treat him herself or facilitate treatment of those conditions by Dr. Fisher and DA Brouchard. These allegations state a plausible claim that Nurse/HSR Coordinator Cruz was deliberately indifferent to Brown's need for treatment of a serious dental condition that caused him pain and a dental condition that might degenerate into a serious condition. The Court will permit these Eighth Amendment deliberate indifference to dental needs claims to proceed against Nurse/HSR Coordinator Cruz, DA Brouchard and Dr. Fisher in their individual capacities.

### Dr. Lichtenstein

Brown contends that in September 2019, Dr. Lichtenstein ignored the potentially serious consequences of failing to further evaluate the pimple that had formed on his upper gum above

16

tooth number 8 and that the pimple was in fact a sign of an infection of either the gum and/or

tooth number 8 that subsequently caused him pain and the loss of that tooth.  Brown states the

Dr. Lichtenstein did not think the pimple, which he labeled as an abscess or fistula, was anything

to worry about in September 2019.  It is unclear, without further development of the record,

whether Dr. Lichtenstein's assessment of the abscess/fistula in September 2019 as a non-serious

condition constituted negligence or malpractice or something closer to subjective recklessness.

*See Harris v. Westchester Cty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *3 (S.D.N.Y.

July 6, 2011) ("As for misdiagnosis, without more, allegations of negligent treatment and

misdiagnosis do not state a cause of action under the Eighth Amendment.") (citation, alteration

and internal quotation marks omitted); *Ravenell v. Van der Steeg*, No. 05-CV-4042, 2007 WL

765716, at *6 (S.D.N.Y. Mar. 14, 2007) ("While a plaintiff may be able to state an Eighth

Amendment claim where a doctor acts without medical justification, no claim is stated when a

doctor disagrees with the professional judgment of another doctor.") (citation and quotation

marks omitted).  Accordingly, the Court will permit the Eighth Amendment claim of deliberate

indifference to dental needs to proceed against Dr. Lichtenstein in his individual capacity for

further development of the record.

### Commissioner Cook and Dental Director Katz

Brown contends that Commissioner Cook and Dental Director Katz, as supervisory

officials, were aware that medical and dental services within the Department of Correction

lacked sufficient funds and staff members due to budgetary shortfalls but took no action to

address these issues.  *See* Compl. at 33-36.  A plaintiff seeking to recover money damages under

section 1983 from a defendant in his or her individual capacity must demonstrate "the

17

defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "liability for supervisory government officials cannot be premised on a theory of respondeat superior because § 1983 requires individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). To demonstrate personal involvement, a plaintiff must plead that:

> 1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[5] Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

There are no allegations that either Commissioner Cook or Dental Director Katz were directly involved in or aware of Brown's dental condition or treatment during his confinement at Cheshire in 2019 or in May and June 2020. Thus, the Court considers Brown's allegations to fall under the third *Colon* category, that they created a policy or custom or permitted the continuance of a policy or custom of inadequate dental and medical staffing and funding for dental and

---

[5]  The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Lombardo v. Graham*, No. 19-1535-PR, 2020 WL 1909581, at *2 (2d Cir. Apr. 20, 2020) (summary order) ("Although we have observed that Iqbal may have heightened the requirements for supervisory liability by requiring more direct personal involvement, we need not decide that issue where, as here, the allegations are also insufficient to state a claim under *Colon*.") (citing *Grullon*,

medical departments.

Although Dr. Fisher mentioned at one point in May 2020 that it was difficult to keep up with the demands for treatment of the 1,400 inmates at Cheshire, Brown does not allege insufficient dental staffing had a bearing on or relation to the lack of or delays in dental treatment provided to him by defendants Fisher, Brouchard or Lichtenstein.  Rather, Brown asserts that the delays in or denials of dental care were the result of DA Brouchard's refusal to schedule him to be examined or treated or evinced a retaliatory motive on the part of Dr. Fisher, Dr. Lichtenstein and DA Yvonne.  *See* Compl. at 24-25 ¶ 33; 29 ¶ 68; at 39 ¶¶ 21-22; at 50-51.  Thus, Brown has not alleged that the inadequate staffing levels contributed to any injury that he suffered.

In addition, Brown's allegations are wholly conclusory.  He alleges no facts suggesting that he alerted either Commissioner Cook or Dental Director Katz to his perceived staffing inadequacies or questioned them when he received delayed dental treatment or received inadequate dental treatment.  Conclusory statements are insufficient to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678.  The claims that Commissioner Cook and Dental Director Katz, in their individual capacities, were deliberately indifferent to Brown's dental needs in violation of the Eighth Amendment are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  The requests seeking injunctive relief, that pertain to treatment for Brown's dental abscess or fistula, broken/extracted tooth number 8 and two other front teeth requiring restoration, that are asserted against Commissioner Cook and Dental Director Katz in their official capacities, will proceed.

**First Amendment Retaliation Claims**

Brown contends that Dr. Fisher and DA Yvonne intentionally blocked him from receiving dental treatment after they became aware that he had filed inmate requests and requests

720 F.3d at 139).  For purposes of this decision, it is assumed that the categories outlined in *Colon* remain valid.

for Health Services Review seeking dental treatment.  Compl. at 53.  Brown characterizes the conduct of Dr. Fisher and DA Yvonne as retaliatory.  *Id.* at 29 ¶ 68; at 40-41, Section H, ¶¶ 7-8; at 50, Section J, ¶ 16.  Brown claims that in September 2019, Dr. Lichtenstein improperly assessed or diagnosed the abscess/fistula on his upper gum as a condition that was not serious in retaliation for a settlement agreement that had been entered in a prior case that Brown had filed against Lichtenstein.  *Id.* at 24 ¶ 29; at 37-39, Section G, ¶¶ 11-14, 20-21.

A district court must "'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)).  Thus, retaliation claims "stated in wholly conclusory terms" are insufficient.  *Dolan*, 794 F.3d at 295 (internal quotation marks and citations omitted).

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that [his] speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted).  "[A]dverse action on the part of the defendants" is defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill v. Pidlypchack*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Davis*, 320 F.3d at 353).  As to the third requirement, the plaintiff must show that "the protected conduct was a substantial or motivating factor" for the defendant's action.  *Holland v. Goord,* 758 F.3d 215, 225 (2d Cir.2014) (citation

and internal quotation marks omitted).

Brown has alleged that in retaliation for both his verbal and written requests for dental treatment, Dr. Fisher and DA Brouchard failed to schedule him to be evaluated or treated in a timely manner, at times refused to provide him with pain medication and refused to prescribe him an antibiotic or otherwise treat the abscess/fistula on his upper gum. The Court will permit these allegations of retaliatory conduct to proceed against Dr. Fisher and DA Brouchard in their individual capacities. *See, e.g.*, *Thurmond v. Thomas-Walsh*, 2019 WL 1429559, at *10 (S.D.N.Y. Mar. 29, 2019) ("The Court concludes that withholding effective medication for seven weeks [which caused plaintiff to experience excruciating pain] in retaliation for filing a grievance constitutes an adverse action. . . .") (collecting cases); *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) ("[I]t is plausible that a denial of medical evaluation, treatment, and adequate pain medication would suffice to deter a similarly situated individual of ordinary firmness from filing a constitutionally protected grievance against a prison doctor.") (citation omitted).

Brown claims that the prior lawsuit filed against Dr. Lichtenstein resulted in an agreement being reached between the parties in January 2018. The parties filed a stipulation of dismissal in the case on February 2018. Brown states that "has reason to believe" that in September 2019, Dr. Lichtenstein improperly assessed or diagnosed the abscess/fistula on his upper gum as a condition that was not serious "as a means of payback" or in retaliation for the settlement agreement that had been reached in *Brown v. Benoit, et al.*, Case No. 3:17cv53(SRU). Compl. at 39, Section G, ¶ 20-21.

The Second Circuit has held that "the prosecution and settlement of a lawsuit and

21

the filing of grievances [are] constitutionally protected activities." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). Thus, the first element of a retaliation claim has been met. With regard to the second element, Brown alleges that Dr. Lichtenstein engaged in adverse conduct in September 2019 by failing to properly assess and evaluate the abscess/fistula on his upper gum as a serious condition that required treatment. Brown suggests that Dr. Lichtenstein "had knowledge that th[e] pimple was a sign of infection and . . . if untreated would spread throughout [his] gums. . . ." Compl. at 38, Section G, ¶ 16. It is not clear that the alleged misdiagnosis of the abscess/fistula as a non-serious condition "would [have] deter[red] a similarly situated individual of ordinary firmness from exercising" his or her "constitutional rights." *Gill*, 389 F.3d at 380. Nor has Brown has not asserted facts to suggest that the January 2018 agreement to settle a case in which Dr. Lichtenstein was a defendant "was a substantial or motivating factor" in the alleged failure by Dr. Lichtenstein in September 2019 to properly diagnose or treat the abscess. Given the time lapse between the date of the settlement agreement and the date when Lichtenstein allegedly misdiagnosed the serious nature of Brown's abscess/fistula, the Court cannot infer a retaliatory motive. *See McMaster v. LaBarge*, 2018 WL 4212033, at *6 (N.D.N.Y. Apr. 10, 2018) (noting that Second Circuit "has established that, generally, six months or fewer between the protected activity and the adverse action supports an inference of causal connection") (citing *Espinal v. Goord,* 558 F.3d 119 129 (2d Cir. 2009) ("Here, we find that the passage of only six months between the dismissal of [the plaintiff's] lawsuit and an allegedly retaliatory beating by officers, one of whom [ ] was a defendant in the prior lawsuit, is sufficient to support an inference of a causal connection.")), *report and recommendation adopted*, 2018 WL 4211912 (N.D.N.Y. Sept. 4, 2018). Although Brown claims to have a

22

"reason to believe," that Dr. Lichtenstein failed to properly diagnose and/or treat the pimple on his upper gum "as a means of payback" for the settlement agreement, he asserts no facts to support this contention.

Accordingly, Brown has not plausibly alleged a First Amendment retaliation claim against Dr. Lichtenstein and this claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**Eighth Amendment Deliberate Indifference to Medical Needs – March 2020**

In addition to the allegations regarding his dental treatment in 2019 and 2020, Brown includes allegations regarding the Department of Correction's handling of the COVID 19 outbreak in March 2020.  Compl. at 20, Section D, General Factual Allegations ¶¶ 118-130. Specifically, he alleges that in early March 2020, Nurse/HSR Coordinator Cruz's failed to take the necessary precautions to prevent the spread of COVID 19 to inmates in his housing unit at Cheshire and failed to provide the necessary treatment in response to information that during the last ten days of March 2020, he and two other inmates showed signs, including high fevers, of having contracted COVID 19.  *Id.* at 44-46, Section I, ¶¶ 29-39.  Brown claims that in addition to a fever, he also experienced lung pain and a "ruined sense of smell."  *Id.* at 48 ¶ 57.  Brown also asserts that Cruz failed to timely process or answer his requests for HSR complaining that she and several other nurses had neglected to take the necessary precautions to prevent the spread of COVID 19 and had failed to respond appropriately to his symptoms suggesting that he had contracted COVID 19.  *Id.* at 46-47 ¶¶ 40-46.

Based upon these allegations, in count ten of the amended complaint, Brown asserts that Cruz was deliberately indifferent to a risk of harm to his health in violation of the Eighth Amendment.  *Id.* at 57.  And in count two of the amended complaint, Brown asserts a claim that

Cruz violated his First Amendment rights when she ignored or failed to timely process his requests for HSR related to the lack of treatment for his COVID 19 symptoms.  *Id.* at 53.

The Court does not herein determine whether these claims are plausible because the Court concludes they are not sufficiently related to the Eighth Amendment claims of deliberate indifference to dental needs discussed above and must be severed.  Rule 21 of the Federal Rules of Civil Procedure provides that a court "may sever any claim against a party" pursuant to a motion filed by a party to the action or on its own. Fed. R. Civ. P. 21.  In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263–66 (D. Conn. 2012) (citation omitted).

The allegations pertaining to a denial of dental treatment by Dr. Lichtenstein in September 2019 and the deprivations of dental treatment by Dr. Fisher, DA Brouchard and Nurse/HSR Coordinator Cruz  from May 2020 to June 2020 do not arise out of the same transaction or occurrence as the failure of Nurse/HSR Coordinator Cruz in March 2020 to take the required precautions to prevent the spread of COVID 19 at Cheshire and to properly diagnose, test or treat Brown for COVID 19 after he exhibited certain medical symptoms.  The factual issues and the factual and/or legal theories related to each claim are not all common to each other.  As such, different witnesses/testimony and documentary evidence would be required to prove the separate claims at trial.  The Court thus concludes that these unrelated allegations

are not properly joined in this action and the relevant factors favor severance of these Eighth

Amendment claims as well as any First Amendment claims against Nurse/HSR Coordinator Cruz

that relate to requests for HSR filed by Brown in connection with his treatment for COVID 19

symptoms.  *See Papantoniou v. Quiros*, No. 3:19CV1996(KAD), 2020 WL 1904692, at *10 (D.

Conn. Apr. 17, 2020) (severing and dismissing without prejudice all claims unrelated to Eighth

Amendment deliberate indifference to medical needs claim as improperly joined in violation of

Rules 20 and 21, Fed. R. Civ. P. and advising plaintiff that improperly joined claims must be

pursued in separate actions) (citations omitted).

Pursuant to Rule 21, Fed. R. Civ. P., the Court severs and dismisses without prejudice the

Eighth Amendment deliberate indifference to medical needs claims and First Amendment claims

asserted against Nurse/HSR Coordinator Cruz.  If Brown wants to pursue these claims, he must

do so by filing a separate lawsuit.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The Clerk is directed to edit the docket to reflect the correct spelling of Dr.

Lichtenstein's last name as Lichtenstein.  The claims and requests for injunctive relief asserted

on behalf of other inmates; the request for declaratory relief; the Fourteenth Amendment claim

that Nurse/HSR Coordinator Cruz violated Brown's due process rights by failing to properly or

timely process his medical grievances; the First Amendment claim that Nurse/HSR Coordinator

Cruz denied Brown his right to seek redress of grievances and/or his access to the courts; the

First Amendment claim that Dr. Lichtenstein retaliated against Brown; and the Eighth

Amendment claim that Commissioner Cook and Dental Director Katz, in their individual

capacities, were deliberately indifferent Brown's dental needs are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The Eighth Amendment claims of deliberate indifference to medical needs and health arising from the failure of Nurse/HSR Coordinator Cruz to take the necessary precautions or comply with the required protocols to prevent the spread of COVID 19 at Cheshire and the failure of Nurse/HSR Coordinator Cruz to arrange for Brown to be tested and to treat him after he began to experience symptoms suggesting that he had contracted COVID 19 and the First Amendment claims asserted against Nurse/HSR Coordinator Cruz that relate to requests for HSR filed by Brown in connection with his treatment for COVID 19 symptoms are **SEVERED** and **DISMISSED** without prejudice pursuant to Rule 21, Fed. R. Civ. P.

The Eighth Amendment deliberate indifference to dental needs claims will proceed against Dr. Fisher, Dr. Lichtenstein, Dental Assistant Brouchard and Nurse/HSR Coordinator Cruz in their individual capacities; the requests seeking injunctive relief pertain to Brown's dental treatment will proceed against Commissioner Cook and Dental Director Katz in their official capacities; and the First Amendment retaliation claims will proceed against Dr. Fisher and DA Brouchard in their individual capacities.

(2)     **Because Brown paid the filing fee in this case, he is responsible for serving the amended complaint on defendants Dr. Fisher, Dr. Lichtenstein, Dental Assistant Brouchard and Nurse/HSR Coordinator Cruz in their individual capacities and on defendants Commissioner Cook and Dental Director Katz in their official capacities pursuant to Rule 4 of the Federal Rules of Civil Procedure.**   The Clerk is directed to send Brown instructions for service of the amended complaint on the defendants in their individual

and official capacities, together with one copy of the amended complaint, one copy of this order, four blank Notice of Lawsuit forms, four blank Waiver of Service of Summons forms, and one summons form completed and issued by the Clerk for defendants Commissioner Cook and Dental Director Katz in their official capacities using the address of the Office of the Attorney General, 165 Capitol Avenue, Hartford, Connecticut 06160.

(3)     Within (30) thirty days of the date of this order, Brown shall effect service of the amended complaint on defendants Dr. Richard Fisher, Dr. Lichtenstein, Dental Assistant Yvonne Brouchard and Nurse/HSR Coordinator Debra Cruz in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the amended complaint, and a copy of this order to each defendant.  **Brown shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to the defendants in their individual capacities.  Brown shall also file the signed Waivers of Service of Summons forms that he receives from the defendants in their individual capacities with the Clerk.**

Brown shall also effect service of the amended complaint on defendants in their official capacities by serving a copy of the summons, amended complaint, and this order on the defendants Commissioner Rollin Cook and Dental Director Stephanie Katz using the address of the Office of the Attorney General, 165 Capitol Avenue, Hartford, Connecticut 06160.  **He shall also file a return of service documenting when defendants Cook and Katz were served with a copy of the amended complaint in their official capacities.**

(4)     Defendants Fisher, Lichtenstein, Brouchard and Cruz shall file a response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date

27

the notice of lawsuit and waiver of service of summons forms are mailed to them by Brown and defendants Cook and Katz shall file an answer to the amended complaint within sixty (60) days of the date they are served with a copy of the amended complaint.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **April 24, 2021**.  Discovery requests and responses need not be filed with the Court.

(6)     All motions for summary judgment shall be filed by **May 24, 2021**.

(7)     The Clerk shall send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(8)     The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Bridgeport, Connecticut this 23rd day of September, 2020.

_____/s/_____
Kari A. Dooley
United States District Judge